# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Johnson, 2013 IL App (5th) 110112**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COREY JOHNSON, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-11-0112 |
| Filed | October 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition was affirmed as to most of his 19 claims of error, including allegations of ineffective assistance of his trial and appellate counsel, following his convictions for two first-degree murders, but pursuant to his claim based on the imposition of a mandatory life sentence without the possibility of parole on a person who was 16 years of age at the time he shot the victims, his sentence was vacated and the cause was remanded for a new sentencing hearing in which defendant's sentence could be reconsidered in light of the United States Supreme Court's decision in *Miller*, which forbids a mandatory sentence of life imprisonment without the possibility of parole on those under 18 years of age at the time of their offense. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 99-CF-995; the Hon. Jan V. Fiss, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Corey Johnson, of Menard, appellant *pro se*.

Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Shobha L. Mahadev, Project Director of Illinois Coalition for the Fair Sentencing of Children, of Northwestern University School of Law, and Lawrence A. Wojcik and Eric M. Roberts, both of DLA Piper LLP (US), both of Chicago, for *amicus curiae*.

Panel

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.

Justices Stewart and Wexstten concurred in the judgment and opinion.

# OPINION

¶ 1      Defendant, Corey Johnson, age 16 at the time of offenses in 1999, was tried as an adult and convicted of first-degree murder (720 ILCS 5/9-1(a) (West 1998)) in the shooting deaths of Charles Evans, age 37 at the time of his death, and Jeremiah Scott, age 18 at the time of his death. The prosecution's theory was that defendant shot Evans and Scott during an attempted carjacking. Prior to trial, the defendant told police he shot Evans and Scott in self-defense after they kidnapped him. At trial, defendant changed his story and testified he got into the car to show Evans and Scott where to buy crack cocaine. He testified that instead of following his directions, they told him they wanted to buy crack in St. Louis and began driving in that direction, at which point defendant began to fear for his life. Defendant testified that there was a struggle for the gun which resulted in the deaths of Evans and Scott. The jury found defendant guilty on both counts.

¶ 2      A presentence investigation report showed that defendant had two prior incidents of delinquency. On November 14, 1997, defendant admitted to a delinquency/residential burglary petition and was placed on one year's probation, which he successfully completed. On May 27, 1999, defendant admitted to a delinquency/burglary petition and was placed on one year's probation, which was not successfully completed due to the murders of Evans and Scott. The presentence investigation further showed defendant violated the inmate discipline code on six occasions while awaiting trial at the St. Clair County jail. These violations led to loss of privileges and lockdown. The presentence investigation showed that defendant completed his GED.

¶ 3    A pretrial psychiatric evaluation concluded that defendant has a low frustration tolerance level and revealed that he had been hospitalized when he was eight years old for psychiatric reasons at the request of a Department of Children and Family Services counselor for aggression, including fire-setting, but had never received any psychotropic medication. During the evaluation by the psychiatrist, defendant admitted to occasionally smoking marijuana and a long history of alcohol abuse. By age 14, defendant was drinking daily and had experienced memory lapses. He continued to drink excessively until the time of his incarceration on the murder charges.

¶ 4    A victim impact statement was submitted by the wife of one of the victims as to how her husband's murder had adversely affected her. The State argued that pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2002)), the trial court was required to sentence defendant to a mandatory term of natural life in prison. Defense counsel agreed that, pursuant to the statute, the trial court lacked discretion in sentencing, but objected on the basis that "mandatory sentencing is *per se* unconstitutional."

¶ 5    On April 15, 2003, the trial court sentenced defendant to a mandatory term of natural life imprisonment without the possibility of parole. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2002). This court affirmed defendant's conviction on direct appeal on September 8, 2004. *People v. Johnson*, No. 5-03-0296 (2004) (unpublished order under Supreme Court Rule 23). On January 28, 2005, defendant filed a *pro se* petition for relief from judgment (735 ILCS 5/2-1401 (West 2004)), which the trial court dismissed *sua sponte*. On July 21, 2005, defendant filed an appeal of that ruling and also filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-8 (West 2004)) in which he raised 11 claims of error. On September 8, 2005, the trial court dismissed the petition as "frivolous and patently without merit," and defendant filed a notice of appeal. The appeals were consolidated. This court reversed the dismissal of defendant's *pro se* petition and remanded for further proceedings. *People v. Johnson*, 377 Ill. App. 3d 854, 879 N.E.2d 977 (2007).

¶ 6    On November 26, 2008, counsel was appointed to represent defendant in additional postconviction proceedings. In 2009, defendant filed a *pro se* petition for new counsel. After a hearing, the trial court denied defendant's motion to appoint new counsel and gave defendant the choice of allowing him to keep his previously appointed counsel or proceed *pro se*. Defendant chose to proceed *pro se*. Ultimately, defendant elected to proceed with a 40-page, single-spaced postconviction petition filed *pro se* on April 12, 2010, which added additional arguments to the petition previously addressed by this court. Most of the allegations raised in the petition pertained to allegations of ineffective assistance of trial and appellate counsel. Defendant also asserted *inter alia* that the State presented perjured testimony at trial and that his sentence of mandatory life in prison failed to reflect his ability to be rehabilitated and constituted cruel and unusual punishment. The following are defendant's 19 claims of error:

    "1. Defendant was denied due process, a fair trial and effective assistance of counsel due to trial counsel's failure to interview and investigate witnesses, visit and investigate the crime scene, call witnesses to testify, and obtain and present evidence that would have supported defendant's defense and appellate counsel was ineffective for failing to

-3-

raise these issues on direct appeal.

2. Trial counsel was ineffective for failing to preserve defendant's right to challenge his sentence and the trial judge improperly admonished defendant of his appeal rights after sentencing and appellate counsel was ineffective for failing to raise this issue on direct appeal. The petition recounts a colloquy between defense counsel and the judge about whether the sentence was mandatory. Counsel was required to file a motion to reconsider sentence prior to filing the notice of appeal.

3. The trial court's denial of defendant's motion to suppress his statements to police was inconsistent with the evidence presented and both trial counsel and appellate counsel were ineffective for failing to challenge the ruling.

4. Defendant's mandatory sentence does not reflect his ability to be rehabilitated and constitutes cruel and unusual punishment.

5. Trial counsel was ineffective in that he advised defendant to stipulate to illegally obtained evidence, and appellate counsel was ineffective for failing to raise this issue on appeal.

6. Defendant was denied a fair trial because of improper closing argument and trial counsel was ineffective for failing to object, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

7. Defendant was denied a fair trial and effective assistance of counsel because of counsel's failure to object to the State's knowing use of false testimony at the suppression hearing, failure to properly prepare for the hearing and make the trial court aware that defendant had been questioned more times than the State acknowledged, failure to consult with defendant prior to the suppression hearing, and failure to file a motion to suppress all the illegally obtained evidence, and appellate counsel was ineffective for failing to raise these issues on direct appeal.

8. Trial counsel was ineffective for failing to file a motion to dismiss the indictment based upon prosecutorial misconduct, the State's knowing use of perjured testimony at the grand jury proceedings, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

9. Trial counsel was ineffective for failing to object to prosecutorial misconduct at trial and failing to allege such misconduct in the motion for a new trial, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

10. The trial court abused its discretion by allowing Detective Brian Lammers to testify about a photograph that showed there were no bushes in the area where defendant initially said he was kidnapped while hiding in said bushes and both trial counsel and appellate counsel were ineffective for failing to raise this issue.

11. The trial court erred in not appointing new counsel to represent defendant at sentencing and during the posttrial phase since defendant alleged several instances of ineffectiveness of trial counsel, and appellate counsel was ineffective for failing to raise this issue.

12. Defense counsel was ineffective for failing to obtain the results of a urine

specimen taken at the Juvenile Detention Center which would have shown defendant was intoxicated during at least one of the interview sessions and this would have led to that statement being suppressed.

13. Defendant was denied a fair trial and due process because of the State's failure to disclose evidence including statements, names of eye witnesses, and photographs, and his counsel was ineffective for failing to notify the trial court of the State's failure to provide such evidence, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

14. Defendant was denied a fair trial, due process, and effective assistance of counsel due to trial counsel's failure to file a motion *in limine* to prevent the State from presenting evidence of defendant's prior bad acts, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

15. Defendant was denied due process, a fair trial, and effective assistance of counsel because of trial counsel's failure to tender involuntary manslaughter instructions and presenting a defense that was not one agreed upon by defendant, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

16. Defendant was denied due process and effective assistance of counsel due to the suppression hearing court abusing its discretion by allowing the State to go beyond the scope of direct examination of defendant, allowing one of the witnesses to testify for improper reasons and commit perjury, and assisting the State in its case, and defense counsel was ineffective for not raising this in his motion for a new trial, and appellate counsel was ineffective for not raising this issue on direct appeal.

17. Defendant was denied due process and a fair trial due to illegal arrest and evidence obtained therefrom.

18. The cumulative effect of the above mentioned errors deprived defendant of due process, a fair trial, and effective assistance of counsel.

19. The cumulative effect of the above mentioned errors deprived defendant of due process and effective assistance of appellate counsel."

In response, on December 11, 2010, the State filed a motion to dismiss defendant's postconviction petition.

¶ 7 On February 1, 2011, the circuit court entered an order dismissing defendant's petition. The circuit court found defendant failed to prove any of his numerous claims of ineffective assistance of trial and/or appellate counsel, defendant's claim that the State presented perjured testimony was without merit, defendant's claim that his rights were violated under the Convention on the Rights of the Child or the International Covenant on Civil and Political Rights was without merit in that neither of those documents was applicable to the instant case and that all judges involved had considered defendant's rights as a juvenile, Illinois law has upheld the imposition of mandatory natural life sentences for juveniles in similar cases, and defendant's claims are barred by waiver/forfeiture and his claim concerning failure to instruct the jury on involuntary manslaughter is barred under the doctrine of *res judicata*. The circuit court also found defendant had not been denied the necessary documents to present his claims.

¶ 8    In this appeal, defendant raises his previous claims, as well as new claims relating to the automatic transfer statute and the mandatory-natural-life-sentencing statute pursuant to *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), issued on June 25, 2012, after the trial court entered its order denying defendant's postconviction petition. In *Miller*, the Supreme Court held the federal constitution's ban against cruel and unusual punishment forbids a mandatory sentence of life imprisonment without the possibility of parole upon offenders who were under the age of 18 years of age at the time of their offense. The Illinois Coalition for the Fair Sentencing of Children filed an *amicus curiae* brief in support of defendant's request for resentencing in light of *Miller*. Defendant's brief breaks down his arguments into six categories: (1) the automatic transfer statute, (2) the mandatory-natural-life-sentencing statute, (3) claims of ineffective assistance of counsel, violation of a right to a fair trial, and the prohibition against cruel and unusual punishment, (4) violation of procedural due process due to failure to hold a hearing and rule on defendant's petition for contempt prior to conducting a hearing on the State's motion to dismiss, (5) additional claims of lack of reasonable assistance of counsel due to the circuit court's failure to appoint new appellate counsel, and (6) additional errors relating mostly to the circuit court's denial of defendant's motion to relitigate his motion to suppress statements. After careful consideration, we affirm in part, but vacate defendant's sentence and remand for a new sentencing hearing so that defendant's mandatory sentence of natural life in prison without the possibility of parole is reconsidered in accordance with the principles set forth by the United States Supreme Court in *Miller*.

¶ 9                                                    ANALYSIS

¶ 10    The Act provides a mechanism by which state prisoners may collaterally challenge their convictions and/or sentences for substantial violations of their federal or state constitutional rights that occurred at their trial and that were not, and could not have been, previously adjudicated. *People v. Whitfield*, 217 Ill. 2d 177, 183, 840 N.E.2d 658, 663 (2005). Therefore, *res judicata* bars issues decided previously on appeal, and issues not raised, even though they could have been raised on appeal, are waived. *People v. Williams*, 209 Ill. 2d 227, 233, 807 N.E.2d 448, 452 (2004). This appeal comes to us after a second-stage dismissal. At a second-stage proceeding, the circuit court must determine whether the petitioner is indigent, and, if so, whether he wishes to have counsel appointed to represent him. 725 ILCS 5/122-5 (West 2008). To survive a second-stage dismissal, the postconviction petition must make a substantial showing of a constitutional violation. *People v. Quigley*, 365 Ill. App. 3d 617, 618, 850 N.E.2d 903, 905 (2006). When ruling on a motion to dismiss a postconviction petition, the circuit court must accept as true all well-pleaded facts that are not positively rebutted by the record. *Williams*, 209 Ill. 2d at 233, 807 N.E.2d at 452. A second-stage dismissal is reviewed *de novo*. *People v. Boyd*, 347 Ill. App. 3d 321, 327, 807 N.E.2d 639, 645 (2004).

¶ 11                                                   I and II

¶ 12    Defendant argues that the automatic transfer provision of the Illinois Juvenile Court Act

of 1987 (705 ILCS 405/5-130(1)(a) (West 2002)) and the mandatory-life-sentencing statute as applied to defendant, a 16-year-old at the time of the murders, are unconstitutional. The State replies that defendant's new claims relating to the automatic transfer statute and the mandatory-natural-life-sentencing statute were not raised in defendant's postconviction petition and are unreviewable by this court. The State also claims that these arguments could have been raised on direct appeal and are, therefore, waived. The State further argues these claims are meritless. We disagree with the State with respect to the mandatory-natural-life-sentencing statute. As for the automatic transfer statute, even if the issue was properly raised, which it was not, courts have rejected the arguments defendant raises regarding substantive and procedural due process, the eighth amendment, and the proportionate-penalties clause. See *People v. Salas*, 2011 IL App (1st) 091880, 961 N.E.2d 831. Defendant has failed to convince us to the contrary.

¶ 13    However, with regard to the mandatory-natural-life-sentencing statute, defendant specifically challenged the statute under which he was sentenced which mandated a natural life term without the possibility of parole. In his petition, defendant claimed he "was denied his constitutional rights under the State and Federal constitutions to effective assistance of counsel, to have a sentence that reflect [*sic*] his ability to be rehabilitated, *** and that [his] sentence is cruel." We also note that *Miller v. Alabama* has only been recently decided and to ignore it and its applicability in the instant case would constitute a serious injustice.

¶ 14    The statute under which defendant was sentenced provides:

> "(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,
>
> ***
>
> (ii) is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2002).

Our supreme court has found this statute to be unconstitutional as applied to a 15-year-old defendant who was convicted of murder based upon a theory of accountability. *People v. Miller*, 202 Ill. 2d 328, 781 N.E.2d 300 (2002).

¶ 15    In that case, our supreme court held that this statute violated the proportionate-penalties clause as applied to its defendant, "a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun." *Miller*, 202 Ill. 2d at 341, 781 N.E.2d at 308-09. Accordingly, our supreme court affirmed the trial court's decision to impose a 50-year prison sentence. *Miller*, 202 Ill. 2d at 343, 781 N.E.2d at 310. However, the court refused to hold that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability would never be appropriate, as "[i]t is certainly possible to contemplate a situation where a juvenile offender actively participated in the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate." *Miller*, 202 Ill. 2d at 341, 781 N.E.2d at 309.

¶ 16      In *Miller v. Alabama*, the United States Supreme Court considered the appeals of "two 14-year-old offenders *** convicted of murder and sentenced to life imprisonment without the possibility of parole. In neither case did the sentencing authority have any discretion to impose a different punishment." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. In that case, Evan Miller was granted *certiorari* from a direct appeal, but the other defendant, Kuntrell Jackson, was before the court on collateral review, specifically the review of the dismissal of a state *habeas* petition. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2461-63.

¶ 17      The Supreme Court relied on its earlier decisions in *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010), declaring unconstitutional the sentencing of a minor to either death or life imprisonment without parole for a nonhomicide offense. It also noted that it had held unconstitutional the mandatory imposition of a capital sentence, ruling that the characteristics of a defendant and the details of his offense must be considered before sentencing him to death. The Supreme Court specifically stated that "*Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult" because a mandatory sentence "precludes consideration of [the offender's] chronological age and its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2468. Following these precedents, the Supreme Court found as follows:

> "[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475.

However, the Supreme Court refused to categorically declare that a juvenile can never receive a life sentence without the possibility of parole for a homicide offense and distinguished earlier decisions in which mandatory natural life imprisonment of adults was upheld. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469-70 (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991) (which upheld a mandatory sentence of life without the possibility of parole for possession of more than 650 grams of cocaine)). Nevertheless, the Court stated, "[G]iven all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469. Thus, according to the Supreme Court's dictate in *Miller*, a defendant under the age of 18 cannot be automatically sentenced to life imprisonment without the possibility of parole, as was the defendant in the instant case.

¶ 18      The *amicus* brief contains an argument that the statute under which defendant was sentenced is void *ab initio*. However, it is clear that *Miller* in no way affects the validity of the natural-life-imprisonment statute as to defendants under the age of 18 and does not deprive or divest a state of its authority to sentence a juvenile defendant at the time of the offense, such as defendant herein. See *People v. Williams*, 2012 IL App (1st) 111145, ¶ 46,

982 N.E.2d 181; *People v. Morfin*, 2012 IL App (1st) 103568, ¶ 40, 981 N.E.2d 1010. The question then becomes, Does *Miller* apply retroactively?

¶ 19    Both sides raise numerous arguments and cite an abundance of authority as to whether or not *Miller* should apply retroactively, *i.e.*, whether *Miller* constitutes a procedural change or whether it constitutes a substantive change, which should or should not be applied retroactively. We recognize that the State has a legitimate interest in the finality of criminal convictions and, therefore, new constitutional rules of criminal procedure are generally not applied retroactively to cases on collateral review. *People v. Sanders*, 238 Ill. 2d 391, 401, 939 N.E.2d 352, 358 (2010). However, in order to determine whether *Miller* should be applied retroactively, we look to the standards set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), and adopted by our supreme court in *People v. Flowers*, 138 Ill. 2d 218, 561 N.E.2d 674 (1990).

¶ 20    Our supreme court has succinctly explained the *Teague* analysis as follows:

"Generally, new rules are not to be applied retroactively to cases on collateral review except in two instance: (1) if the rule places certain kinds of primary, private individual conduct beyond the power of the criminal-law-making authority to proscribe; or (2) if the rule requires the observance of those procedures that are implicit in the concept of ordered liberty." *People v. Sanders*, 238 Ill. 2d 391, 401, 939 N.E.2d 352, 358 (2010).

The second exception is limited to " 'watershed rules of criminal procedure' " and to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Sanders*, 238 Ill. 2d at 401, 939 N.E.2d at 358 (quoting *Teague*, 489 U.S. at 311).

¶ 21    In *Morfin*, our colleagues in the First District applied a *Teague* analysis and held that *Miller* creates a new substantive rule that applies retroactively and that courts are required to hold a sentencing hearing for every minor convicted of first-degree murder at which a sentence other than natural life imprisonment must be available for consideration. *Morfin*, 2012 IL App (1st) 103568, ¶ 56, 981 N.E.2d 1010. The *Morfin* court found that its decision was reinforced by the fact that in *Miller*, one of the two defendants was before the Supreme Court on collateral review and received the same relief as the defendant on direct review. *Morfin*, 2012 IL App (1st) 103568, ¶ 57, 981 N.E.2d 1010.

¶ 22    In *People v. Williams*, 2012 IL App (1st) 111145, 982 N.E.2d 181, the First District held that *Miller* constituted a substantial change in the law and was a watershed rule of criminal procedure, and also pointed out the importance between the two defendants in *Miller*, specifically stating:

"It is instructive that the *Miller* companion case, *Jackson v. Hobbs*, arising on collateral review, involved a life-without-parole-sentence heretofore final. Notwithstanding its finality, the Supreme Court of the United States in effect retroactively applied *Miller* and vacated Jackson's sentence. '[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated.' *Teague*, 489 U.S. at 300. The *Miller* case held under the eighth amendment that it is cruel and unusual punishment to impose a mandatory life sentence without parole to a special class–juveniles. It would also be cruel and unusual

to apply that principle only to new cases." *Williams*, 2012 IL App (1st) 111145, ¶ 54, 982 N.E.2d 181.

We agree with our colleagues in the First District that it would be cruel and unusual to apply *Miller* only to new cases and hold that *Miller* should apply retroactively. However, we acknowledge that not all courts agree on the issue of retroactivity.

¶ 23     For example, in *Craig v. Cain*, No. 12-30035 (5th Cir. Jan. 4, 2013) (*per curiam*) (unpublished opinion), the United States Fifth Circuit Court of Appeals held *Miller* established a new rule, but that new rule did not apply retroactively, as *Miller* did not categorically bar all sentences of life imprisonment for juveniles and did not qualify as a watershed rule of criminal procedure, as it was an outgrowth of the Supreme Court's prior decisions relating to individualized sentencing determinations. In *People v. Carp*, 828 N.W.2d 685 (Mich. Ct. App. 2012), a Michigan appellate court held that *Miller* should not be applied retroactively to cases already final on appeal when the *Miller* decision was rendered. That court analyzed the retroactivity question using a *Teague* analysis, as well as the Michigan state standard, and found that *Miller* dealt exclusively with sentencing and, therefore, was procedural, not substantive, in nature and did not comprise a watershed rule. We find *Carp* distinguishable on the grounds that it employed its own state's standards, and to the extent it is not distinguishable, we respectfully disagree with it and other courts which have determined that *Miller* should not apply retroactively.

¶ 24     Looking at the case before us, it is clear that the sentencing court did not consider defendant's status as a juvenile at the time of the offense when making its determination. Even defense counsel agreed that pursuant to statute, defendant was to be sentenced to mandatory life imprisonment without the possibility of parole. The mandatory life sentence imposed herein violates the eighth amendment's prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at ___, 132 S. Ct at 2460. We, therefore, vacate defendant's sentence and remand for a new sentencing hearing in which natural life imprisonment is not the only available sentence. We note, however, that defendant may again be sentenced to natural life in prison, as there is nothing which prohibits a sentence of natural life in prison for a minor so long as the sentence is at the trial court's discretion and not mandatory. *Miller*, 202 Ill. 2d at 341, 781 N.E.2d at 309.

¶ 25                                                    III

¶ 26     Defendant attempts to raise a myriad of other issues in his third issue raised on appeal. Defendant asserts claims of denial of due process, ineffective assistance of counsel, violation of a right to fair trial, and the prohibition against cruel and unusual punishment. The State replies that we should strike or disregard the claims raised in the third issue due to violations of Illinois Supreme Court Rule 341 (eff. July 1, 2008), which deals with the content of briefs, and even if we chose to consider these arguments, they are without merit. We agree with the State.

¶ 27     In the instant case, defendant discharged his appointed counsel and chose to proceed on the *pro se* petition he filed on April 12, 2010. The petition is 40 pages long, typed, and single-spaced, and it contains 19 claims, with most of the arguments pertaining to ineffective

assistance of trial and appellate counsel. In response, the State filed a detailed motion to dismiss, which included citations to the record and supporting case law. The circuit court dismissed under the doctrines of waiver and forfeiture and also found the claims made by defendant are barred under the doctrine of *res judicata*.

¶ 28    Defendant's affidavit and *pro se* brief merely claim the issues he raised in his petition should be taken as true. He asserts the adequacy of the exhibits to the petition without naming what the exhibits are or how they support it. Defendant's *pro se* brief is so lacking with regard to issue III that in order to fully address it, we would have to scour the record and act as his advocate in search of support for his claims, which we are not required to do. See *People v. Webber*, 234 Ill. App. 3d 641, 644, 600 N.E.2d 68, 70 (1992). While defendant strives to disguise his arguments under the veil of due process, the right to effective assistance of counsel, the right to a fair trial, and the right to be free from cruel and unusual punishment, it is well settled that a postconviction petitioner is not entitled to relief under the Act by merely "rephrasing previously addressed issues in constitutional terms," as waiver and *res judicata* bar these claims. (Internal quotation marks omitted.) *People v. Flores*, 153 Ill. 2d 264, 277-78, 606 N.E.2d 1078, 1084-85 (1992). We reject defendant's arguments raised in his third issue.

¶ 29                                                    IV

¶ 30    The fourth issue raised by defendant is a violation of procedural due process due to the circuit court's failure to hold a hearing and rule on defendant's petition for contempt prior to conducting a hearing on the State's motion to dismiss. We are unconvinced that defendant's due process rights were violated in this regard.

¶ 31    In the instant case, defendant filed a petition seeking an order of contempt against the St. Clair County juvenile detention center and the East St. Louis police department for failing to respond to his subpoenas. Defendant received some documents from the detention center, but the police department was unable to comply with defendant's request, specifically stating that even if the evidence which defendant requested in fact existed, it "was stored in a building which has been condemned due to structural and asbestos-related problems and that any property contained therein is no longer accessible." The record reflects that the State did all it could to provide defendant with the documents he sought prior to filing its motion to dismiss, but neither the detention center nor the police department could provide defendant with any additional documents.

¶ 32    In its order dismissing defendant's postconviction petition, the circuit court specifically stated "that defendant attached documents from the St. Clair County Juvenile Detention Center to his postconviction petition and rejects any claims that he was denied the necessary documents to present his claims." Defendant has failed to convince us to the contrary. Thus, we find that defendant's procedural due process rights were not violated as he claims.

¶ 33                                                    V

¶ 34    The fifth issue raised by defendant includes additional claims of lack of reasonable assistance of counsel due to the circuit court's failure to appoint new appellate counsel. We

are unconvinced.

¶ 35　It is well settled that a defendant does not have a constitutional right to the assistance of counsel during a postconviction proceeding. *People v. Moore*, 189 Ill. 2d 521, 541, 727 N.E.2d 348, 358 (2000). However, in the case of an indigent defendant, the law does provide for the appointment of counsel. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Because the right to counsel in a postconviction proceeding is derived from statute rather than the federal or state constitution, postconviction petitions are guaranteed only the level of assistance provided for in the Act. That assistance has been defined by our supreme court to mean a "reasonable" level of assistance. *Flores*, 153 Ill. 2d at 276, 606 N.E.2d at 1084.

¶ 36　In the instant case, second-stage counsel was appointed on November 26, 2008. On September 16, 2009, appointed counsel filed an amended postconviction petition on behalf of defendant. On October 28, 2009, defendant discharged appointed counsel and decided not to proceed on the amended postconviction petition filed by appointed counsel, but rather chose to proceed *pro se*. On April 12, 2010, defendant filed a *pro se* amended petition. It was this petition that was presented to the circuit court and dismissed. Accordingly, we have no way to judge appointed counsel's representation and, thus, we find defendant's arguments hypothetical.

¶ 37　A reviewing court should not engage in hearing abstract and hypothetical arguments. *People v. Coupland*, 387 Ill. App. 3d 774, 776-77, 901 N.E.2d 448, 452 (2008). Here, defendant basically argues that postconviction counsel would have provided unreasonable assistance, if defendant allowed him to provide such assistance. We need not consider this argument. We do, however, note that after reviewing the record as a whole, especially appointed counsel's amended petition, the incidents leading up to defendant's decision to proceed *pro se*, and his later request for new counsel, we are satisfied by the circuit court's denial of new postconviction counsel and its decision to allow defendant to proceed *pro se*.

¶ 38　　　　　　　　　　　　　　　　　　VI

¶ 39　The final issue raised by defendant is that the circuit court erred in denying his motion to relitigate his motion to suppress statements. Defendant insists a new suppression hearing is necessary because he did not receive a full and fair hearing during his original hearing due to prosecutorial misconduct, ineffective assistance of counsel, and perjury committed by the State's witnesses, Tony Bennett, Delbert Marion, and James Newcombe. Defendant's allegations in this regard mainly rehash arguments he previously raised under argument III.

¶ 40　In any event, the State's motion to dismiss addressed this issue, and the trial court specifically stated in its amended order as follows:

> "The Court finds that defendant's claim that the State presented perjured testimony is without merit. The law is clear that minor inconsistencies do not rise to the level of perjured testimony. *People v. Tyner* (1968) 40 Ill. 2d 1, 238 N.E.2d 377. Defendant has established no more than minor and understandable inconsistencies. The Court rejects this claim."

We agree with the circuit court that defendant has failed to establish that his constitutional rights were substantially violated in this regard.

¶ 41                            CONCLUSION

¶ 42       For the foregoing reasons, the judgment of the circuit court of St. Clair County dismissing defendant's amended postconviction petition is affirmed in part. We vacate defendant's sentence and remand for a new sentencing hearing in which the circuit court reconsiders defendant's sentence of natural life in prison without the possibility of parole in accordance with the principles set forth by the United States Supreme Court in *Miller*.

¶ 43       Affirmed in part and vacated in part; cause remanded with directions.