

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00278-CR

Jose Eduardo **ARREDONDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2010CRO000478D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 26, 2013

AFFIRMED

A jury convicted appellant, Jose Eduardo "Lalo" Arredondo, of one count of capital murder, one count of aggravated kidnapping, and two counts of aggravated sexual assault. The trial court sentenced appellant to life on each count, with the life sentences on the two counts of aggravated sexual assault to run consecutive and cumulative to each other, and the remaining life sentences to run concurrently. Appellant was a juvenile at the time the offenses were committed and was eighteen years of age on the date the judgment was entered. In two issues on appeal, appellant contends (1) the trial court erred in denying his motion to suppress the autopsy report

and testimony of the medical examiner because the examiner failed to file an oath of office prior to conducting the autopsy of the victim, and (2) the trial court's entry of two consecutive life sentences violates the Eight and Fourteenth Amendments of the United States Constitution, and contravenes the intent of the Texas Legislature.

### BACKGROUND

This is a horrific crime that resulted in the violent sexual assault and murder of a two-year-old child. Because the facts of the case are gruesome and are not particularly relevant to the resolution of appellant's issues on appeal, we will not go into them anymore than is necessary.

### MOTION TO SUPPRESS

Appellant contends the Webb County medical examiner was a "public officer" who must file the oath of office described in Article 16, Section 1(a) of the Texas Constitution prior to conducting the autopsy of a victim. Because she had not done so prior to conducting the autopsy in this case, appellant argued her actions were void; therefore, his pretrial motion to suppress the autopsy, testimony regarding the autopsy, and DNA test results should have been granted.

Article 49.25 of the Texas Code of Criminal Procedure sets forth the requirements and duties of the medical examiner. *See* TEX. CODE CRIM. PROC. ANN. art. 49.25 (West 2006). Section 1 of article 49.25 provides: "Subject to the provisions of this Act, the Commissioners Court of any county having a population of more than one million and not having a reputable medical school . . . shall establish and maintain the office of medical examiner, and the Commissioners Court of any county may establish and provide for the maintenance of the office of medical examiner." *Id*. § 1. Section 2 details the appointment of the medical examiner and provides: "The commissioners court shall appoint the medical examiner, who shall serve at the pleasure of the commissioners court." *Id*. § 2. The Code contains no oath requirement.

Article 16, Section 1(a) of the Texas Constitution provides the oath of office required for "elected and appointed officers." *See* TEX. CONST. art. XVI, § 1(a). The section states: "All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation: 'I, __, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of ___ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God." *Id.* Appellant argued at trial, and argues now on appeal, that the medical examiner is a "public officer" because the medical examiner is "appointed" by the commissioner's court, and, therefore, is an "appointed officer" who must take and file the oath with the office of the county clerk.

"An individual is a public officer if any sovereign function of the government is conferred upon that individual to be exercised for the benefit of the public largely independent of the control of others." *Prieto Bail Bonds v. State*, 994 S.W.2d 316, 320 (Tex. App.—El Paso 1999, pet. denied). "In other words, a public 'officer' is authorized by law to independently exercise functions of either an executive, legislative, or judicial character, and the exercise of this power by the officer is subject to revision and correction only according to the standing laws of this state." *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 931 (Tex. Crim. App. 1994). "A public employee, in contrast, is a person in public service whose duties are generally routine, subordinate, advisory, and as directed." *Id.*

Although we have found no case specifically discussing whether a county medical examiner is a "public officer" requiring the Constitutional oath, many cases have interpreted whether a variety of positions are considered a "public office." *See Aldine Indep. School Dist. v. Standley*, 154 Tex. 547, 553, 280 S.W.2d 578, 582–83 (1955) (tax assessor-collector of school district not an officer; although he performed a sovereign function, statute creating office put that power in the school board, not in the office of the assessor-collector); *Pirtle*, 887 S.W.2d at 931

(an assistant district attorney is a public employee, not a public official); *Krier v. Navarro*, 952 S.W.2d 25, 26 (Tex. App.—San Antonio 1997, writ denied) (elections administrator appointed pursuant to section 31.032 of the Texas Election Code not a public officer, but a "public employee"); *Harris Cnty v. Schoenbacher*, 594 S.W.2d 106, 111 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (juvenile probation officer not a "public officer" because he did not exercise power "largely independent" of juvenile board).

Appellant relies on two cases—one from the Eighth Court of Appeals and one from the Court of Criminal Appeals—for the proposition that the failure of a medical examiner to take the Constitutional oath renders her actions void or voidable. First, appellant cites *Prieto*, in which the court of appeals decided whether the Constitutional oaths required of all "elected and appointed" officers apply to retired judges assigned to courts. *Prieto*, 994 S.W.2d at 318. The court focused on the "nature of the judge's function as an 'officer' rather than on the nature of the 'office' held." *Id*. at 320. In concluding that senior judges are indeed "public officers" who must take the Constitutional oath, the court reasoned:

> Specifically, the authorization to pronounce judgment and to adjudicate the rights of parties appearing in court has been held to be a sovereign function of the government and a mark of public office. Senior judges . . . though they hold no true permanent office . . . are nevertheless authorized to function as judges and as such are entrusted with independent and sovereign powers.

*Id*.

In the second case on which appellant relies, *French v. State*, 572 S.W.2d 934, 939 (Tex. Crim. App. 1977), the Court of Criminal Appeals concluded a search warrant issued by a judge who had been appointed as municipal judge was void because the judge had not taken the oath of office. The Court held, "[w]ithout the taking of the oath prescribed by the Constitution of this State, one cannot become either a de jure or de facto judge, and his acts as such are void." *Id*.

- 4 -

Here, at the pretrial hearing on appellant's motion to suppress, Dr. Stern testified to the following: She works under the Texas Code of Criminal Procedure, which allows her to remove decedents from scenes in certain circumstances as outlined by the Code and she has no duties independent of those prescribed in the Code. As dictated by law, her job "is to determine cause and manner of death," and she makes the decision of whether to perform an autopsy independently. Dr. Stern has five supervisors—the Webb County Judge and four county commissioners. She testified, "[t]hey supervise every function of my department, everything from my employees to who I can hire, how many employees I can have, what my work schedule can be, what my budget is, how I use that budget." She testified she works under "their direct supervision" and receives "numerous" calls during the week regarding her job from her supervisors. She has an "official evaluation" by the commissioners every year and they determine whether she can be appointed for another year.

With Dr. Stern's testimony in mind, we believe both cases appellant cites are distinguishable. *Prieto* and *French* concern judges performing sovereign functions of the government, adjudicating the rights of others, without taking the required Constitutional oath. There is no question judges are considered "public officers" for purposes of the Constitution. *See Prieto*, 994 S.W.2d at 320 (holding senior judges must take oaths and stating "adjudicat[ing] the rights of parties appearing in court has been held to be a sovereign function of the government and a mark of public office."); *Thompson v. City of Austin*, 979 S.W.2d 676, 682 (Tex. App.—Austin 1998, no pet.) ("Entrusted with independent and sovereign powers, judges are public officers . . . ."). The office of a judge is marked with "the indicia of public office: the judge is a member of the judiciary authorized to pronounce judgment and to adjudicate the rights of parties appearing in court; the judge occupies a position of responsibility to the public and is governed by a fixed

term of office with specific removal provisions; the judge must meet statutory qualifications for holding the position and is required to take an oath of office." *Thompson*, 979 S.W.2d at 683.

In contrast, we do not believe determining the cause and manner of death of an individual is considered performing a "sovereign function" of the government that is "largely independent of the control of others," so as to qualify a medical examiner as a "public officer." *See Prieto*, 994 S.W.2d at 320. The focus should be on the functions the medical examiner performs, not on the "office" she holds. *Id*. Although determining the cause and manner of death of an individual certainly confers a benefit to the public, we do not believe this to be a "function[] of either an executive, legislative, or judicial character." *Pirtle*, 887 S.W.2d at 931.

Instead, we believe a medical examiner's duties to be more in line with cases determining a person is a "public employee." For instance, in *Schoenbacher*, the Houston Court of Appeals concluded a chief juvenile probation officer was not an "officer," but was instead a "public employee" as he did not perform his duties largely independent of the control of the juvenile board. *Schoenbacher*, 594 S.W.2d at 111. The court noted, ". . . the statute authorizes the judge of the juvenile court to appoint the chief juvenile probation officer and, subject to the approval of the juvenile board, to remove him from that position at any time." *Id*. The court also noted:

> . . . the statute confers on the juvenile board, not the chief juvenile probation officer, the primary responsibility for preparing the annual budget, for investigating, reporting to and making recommendations to commissioner's court regarding the operation of the probation department and the county institutions, and for establishing personnel policies for the employees of such department and institutions. The chief juvenile officer may hire or fire employees within the juvenile probation department and the county institutions under his care, but in the absence of approval of the juvenile board, he does not have the authority to appoint or remove his own supervisors and superintendents.

*Id*. Likewise, Dr. Stern testified she is subject to removal by the commissioners' court and is evaluated by them. She also testified the commissioners determine her budget, how she can use that budget, how many staff members she can have, who she may hire, and what her work schedule

is like. She testified she works under the "direct supervision" of the commissioners and she is subject to review and removal by them.

Based on the foregoing, we conclude a county medical examiner is not a "public officer" as described in Article 16, Section 1(a) of the Texas Constitution and, thus, is not required to take the oath provided in that section. Accordingly, we conclude the trial court did not err in denying appellant's motion to suppress the autopsy report, testimony, and DNA results based on the argument that Dr. Stern did not file an oath prior to conducting the autopsy.

### LIFE SENTENCES

The jury convicted appellant, a juvenile offender, of one count of capital murder, one count of aggravated kidnapping, and two counts of aggravated sexual assault. The trial court imposed a life sentence on each of the four counts, with the life sentences on the two counts of aggravated sexual assault to run consecutively and the remaining sentences to run concurrently. In his second issue, appellant contends the two consecutive life sentences on the counts of aggravated sexual assault amount to a de facto sentence of life without parole for nonhomicide offenses and, because of his juvenile offender status, the sentence violates the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution as the Supreme Court has dictated in *Graham v. Florida*, 130 S.Ct 2011 (2010). We express no opinion on whether appellant's sentence amounts to a de facto sentence of life without parole; however, for the purpose of addressing the merits of his argument, we predicate our analysis on the assumption that it does.

In *Graham*, the juvenile defendant pled guilty to armed burglary and attempted armed robbery, for which he was placed on deferred adjudication probation pursuant to a plea bargain. *Id*. at 2018. When he violated his probation, the trial court found him guilty of the offenses and

sentenced him to life without parole[1] for the armed burglary and fifteen years' imprisonment for the attempted armed robbery, both nonhomicide offenses. *Id*. at 2020. The Court held the Eighth Amendment forbids a State from imposing a sentence of life without parole on a juvenile offender who does not commit homicide. *Id*. at 2030. However, in clarifying its ruling, the Court noted:

> Juvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide. It is difficult to say that a defendant who receives a life sentence on a nonhomicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination. The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.

*Id*. at 2023.

The Supreme Court made clear that its holding only concerned cases where juvenile offenders are sentenced to life without parole solely for nonhomicide offenses. Here, appellant was found guilty of both homicide and nonhomicide offenses.

In the more recent opinion of *Miller v. Alabama*, 132 S.Ct. 2455, 2464 (2012), the Supreme Court held mandatory sentences of life without parole for juveniles violate the Eighth Amendment. In *Miller*, two separate juvenile defendants were found guilty of murder—one of murder in the course of arson and the other of capital murder. *Id*. at 2461. Both sentencing schemes provided a mandatory sentence of either death or life without parole when convicted of either of those offenses. Because the Supreme Court had previously invalidated the death penalty for juvenile offenders, the trial court had only one possible option in sentencing upon conviction—life without parole. *Id*.; *see Roper v. Simmons*, 543 U.S. 551, 575 (2005) (holding the death penalty cannot be imposed upon juvenile offenders). A sentence of life without parole was the required, mandatory sentence for a juvenile offender convicted under the statute and was automatically imposed upon

---

[1] The defendant in *Graham* was sentenced to "life." However, because Florida abolished its parole system, a life sentence gives a defendant no possibility of release and, thus, was essentially a sentence of life without parole.

conviction, with no exercise of discretion as to whether such a sentence was appropriate. The *Miller* Court held such a sentencing scheme providing for a required, mandatory sentence of life without parole for juvenile offenders violated the Constitution, and precluded a sentencer from taking into account an offender's age, life circumstances, and the circumstances of the homicide offense. *Miller*, 132 S.Ct. at 2464, 2467-68. However, the Court did not hold that *discretionary* life without parole sentences violate the Eighth Amendment. *See id*. at 2469 ("[A] sentencer needed to examine all these circumstances before concluding that life without any possibility of parole was the appropriate penalty."). Instead, in regards to life-without-parole sentences for juvenile offenders, the *Miller* Court stated, "[a]lthough we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*.

In sum, *Graham* prevented the imposition of life without parole for juvenile offenders convicted of nonhomicide offenses. *Miller* prevented the *mandatory* imposition of life without parole for juvenile offenders, but specifically allowed a *discretionary* sentence of life without parole when the circumstances justify it. Therefore, even assuming for purposes of argument that two consecutive life sentences amount to a sentence of "life without parole," we conclude nothing prevents such a discretionary sentence when, as here, appellant has been found guilty of both a homicide offense and nonhomicide offenses in a particularly heinous crime.

Appellant also asserts the imposition of two consecutive life sentences contravenes the intent of the Texas Legislature in amending Texas Penal Code section 12.31(a)(1) to provide for a sentence of life imprisonment for juvenile offenders, rather than life without parole.

Texas Penal Code section 12.31 provides the sentencing scheme for offenders convicted of a capital felony. *See* TEX. PENAL CODE ANN. § 12.31(a) (West 2011). Prior to September 1, 2009, section 12.31(a) provided for only two sentencing options when an individual was found

guilty of a capital felony—death or life without parole. Act of Sept. 1, 2005, 79th Leg., R.S., ch. 787, § 1, sec. 12.31, 2005 Tex. Gen. Laws 2705, 2705. The section was amended by the Legislature and now provides for a sentence of death, life without parole, or, when the convicted offender is a juvenile transferred to district court from juvenile court under Family Code section 54.02, life.[2] TEX. PENAL CODE § 12.31(a) (West 2011). The current statute reads as follows:

> An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for: (1) *life, if the individual's case was transferred to the court under Section 54.02, Family Code*, or (2) life without parole.

*Id*. (emphasis added). Appellant argues that because the Legislature amended Penal Code section 12.31(a) to prohibit a sentence of life without parole for juvenile offenders convicted of capital murder, then it would follow that the Legislature also intended to prohibit a sentence of life without parole for "less serious offenses," such as aggravated sexual assault. Again, assuming appellant's sentence amounts to life without parole, we disagree with appellant's argument.

Aggravated sexual assault is a first degree felony, and, as dictated by Penal Code section 12.32(a), carries a sentence of "life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE §12.32 (first degree felony punishment); *see* TEX. PENAL CODE § 22.021(e) (aggravated sexual assault is a first degree felony). The sentencer has *discretion* to sentence between the range provided.

The *Miller* holding clearly tells us that a mandatory sentence of life without parole for juveniles is unconstitutional because it is a violation of the Eighth Amendment to automatically sentence a juvenile to life without parole without first considering "how children are different"

---

[2] The Texas Family Code allows for the transfer of juvenile cases from the juvenile court to the criminal district court when certain circumstances are met. *See* TEX. FAM. CODE ANN. § 54.02 (West 2008). Here, appellant's case was transferred from juvenile court to the district court under this section of the Family Code.

and how those differences may weigh against the imposition of such a harsh sentence. *See Miller*, 132 S.Ct. at 2468–69. This same principle is reflected in the Legislature's amendment of section 12.31, which, three years prior to the *Miller* decision, was amended to prohibit a *mandatory* sentence of life without parole for a juvenile offender convicted of a capital felony. However, neither the holding in *Miller* nor the legislative amendment to section 12.31 concerned discretionary sentences.

"[C]ourts must apply penal statutes exactly as they read." *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991). We decline to extend the Legislature's amendment of section 12.31(a) so far as to imply the Legislature intended to never allow a trial court the discretion to impose a sentence of life without parole for a juvenile convicted of both homicide and nonhomicide offenses. *See id.* (quoting *Ex parte Davis*, 412 S.W.2d 46, 52 (Tex. Crim. App. 1967)) ("Where the statute is clear and unambiguous the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."). Based on the foregoing, we conclude appellant's sentence does not violate his constitutional rights.

## CONCLUSION

We overrule both of appellant's issues on appeal. The trial court's judgment is affirmed.

Sandee Bryan Marion, Justice

Publish